1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KARTIK SESHADRI,<br><br>                              Plaintiff,<br><br>      v.<br><br>BRITISH AIRWAYS PLC,<br><br>                              Defendant. | Case No. 3:14-cv-00833-BAS(WVG)<br><br>**ORDER:**<br>   **(1) DENYING PLAINTIFF'S MOTION FOR PARTIAL REMAND (ECF NO. 9);**<br><br>   **(2) GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 5); AND**<br><br>   **(3) DENYING DEFENDANT'S MOTION TO STRIKE (ECF NO. 4)** |

On March 6, 2014, Plaintiff Kartik Seshadri ("Plaintiff") commenced this action against Defendant British Airways, Plc ("Defendant") in San Diego Superior Court alleging claims for property damage pursuant to Articles 17 and 22 of the Montreal Convention and intentional infliction of emotional distress.  Defendant removed this action to federal court on April 8, 2014 on the grounds of diversity of citizenship under 28 U.S.C. § 1332 and federal question under 28 U.S.C. § 1331.

Defendant now moves to dismiss Plaintiff's claim for intentional infliction of

emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 5), and to strike Plaintiff's prayer for punitive damages pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 4).  Plaintiff concurrently moves to remand his cause of action for intentional infliction of emotional distress to San Diego Superior Court (ECF No. 9).

The Court finds these motions suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the following reasons, the Court (1) **DENIES** Plaintiff's motion for partial remand; (2) **GRANTS** Defendant's motion to dismiss Plaintiff's cause of action for intentional infliction of emotional distress; and (3) **DENIES** Defendant's motion to strike Plaintiff's prayer for punitive damages.

# I.    BACKGROUND

Plaintiff alleges he is a "world-renowned musician" in the field of Indian Classical Music.  (ECF No. 1-2 ("Compl.") at ¶ 15.)  When Plaintiff performs, he does so with a specific sitar ("Sitar") which he has owned for over thirty-five years.  (*Id.* at ¶ 16.)  The Sitar had been "specially handcrafted for Plaintiff to fit his needs and 'individual tone' which is a hallmark of his style and playing." (*Id.*)  When he travels with the Sitar, Plaintiff uses a "specialized protective instrument case" whose shape, materials, and design allegedly make it apparent to any person that the case holds a fragile musical instrument.  (*Id.* at ¶ 21.)

On or about July 29, 2013, Plaintiff alleges he purchased a round-trip ticket from Defendant, a global airline, to travel from the United States to India.  (*Id.* at ¶¶ 8, 17.)  Plaintiff's return flight was scheduled to leave New Delhi, India on September 15, 2013 and arrive in San Diego on the same day, with a connection through London.  (*Id.* at 17.)  The return flight was allegedly operated by Defendant on an aircraft owned by Defendant, and all baggage on the plane was allegedly handled by Defendant, its agents or employees.  (*Id.* at ¶ 18.)  On September 15, 2013, Plaintiff contends he arrived at the New Delhi airport with the Sitar in its case

1    and communicated to a check-in representative for Defendant that he was

2    transporting a fragile musical instrument requiring special handling.  (*Id.* at ¶¶ 20-

3    22.)  Defendant's agent allegedly acknowledged the delicate nature of the Sitar,

4    placed a fragile tag on the bag holding the case, and then took control of it.  (*Id.* at ¶

5    22–23.)

6         Upon arriving in San Diego, Plaintiff learned the Sitar had not been on the

7    connecting flight out of London which distressed Plaintiff.  (*Id.* at ¶¶25–26.)  The

8    Sitar arrived in San Diego the next day on September 16, 2013.  (*Id.* at ¶ 28.)  After

9    Plaintiff collected the Sitar at the San Diego airport from Defendant's baggage

10   agent and took it home, he discovered the outer canvas bag was allegedly

11   "extremely damp."  (*Id.*)  When Plaintiff unpacked the Sitar, he contends the hard

12   case had a "thick layer of condensation over its entirety" and the "Sitar itself was

13   freezing to the touch, a combination of frozen and soaked."  (*Id.*)  Upon discovering

14   the Sitar was "in an unsalvageable condition," Plaintiff allegedly became

15   "extremely distressed to the point of panic."  (*Id.*)  On September 17, 2013, Plaintiff

16   contends a representative of Defendant contacted him in response to his numerous

17   calls and messages.  (*Id.* at ¶¶ 28-29.)  The representative allegedly stated that the

18   only way luggage could arrive either frozen or with extreme condensation is if it

19   had been placed in the wrong cargo hold which was not pressurized for baggage.

20   (*Id.* at ¶ 29.)

21        On March 6, 2014, Plaintiff commenced this action against Defendant in San

22   Diego Superior Court alleging claims for property damage pursuant to Articles 17

23   and 22 of the Montreal Convention and intentional infliction of emotional distress.

24   Defendant now moves to dismiss Plaintiff's claim for intentional infliction of

25   emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No.

26   5), and to strike Plaintiff's prayer for punitive damages pursuant to Federal Rule of

27   Civil Procedure 12(f) (ECF No. 4).  Plaintiff also moves to remand his cause of

28   action for intentional infliction of emotional distress to San Diego Superior Court

1  (ECF No. 9).

2  **II.    LEGAL STANDARD**

3      **A.    Subject Matter Jurisdiction**

4      "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian*

5  *Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power

6  authorized by Constitution and statute, which is not to be expanded by judicial

7  decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies

8  outside this limited jurisdiction and the burden of establishing the contrary rests

9  upon the party asserting jurisdiction." *Id.* (internal citations omitted); *see also*

10  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). "The

11  Ninth Circuit strictly construe[s] the removal statute against removal jurisdiction."

12  *Grace v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d. 1173, 1174 (S.D. Cal. 2013)

13  (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

14      1.    Federal Question

15      Pursuant to 28 U.S.C. § 1441, "a defendant may generally remove a civil

16  action from state court to federal district court if the district court would have had

17  subject matter jurisdiction had the action been originally filed in that court." *Roth*

18  *v. CHA Hollywood Med. Ctr.*, L.P., 720 F.3d 1121, 1124 (9th Cir. 2013). Federal

19  question jurisdiction is governed by the well-pleaded complaint rule, which

20  provides that federal jurisdiction exists only if a federal question is presented on the

21  face of a properly pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

22  392 (1987). An affirmative defense raising a federal question is insufficient to

23  confer federal question jurisdiction. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1,

24  6-9 (2003); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007). The

25  doctrine of complete preemption is a narrow corollary to the well-pleaded

26  complaint rule. *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102,

27  1107 (9th Cir. 2000). Under the complete preemption doctrine, "the preemptive

28  force of some statutes is so strong that they 'completely preempt' an area of state

law" and give rise to federal question jurisdiction.  *Id.*  (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983)).  "The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims."  *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) (citation omitted).  "If so, then the cause of action necessarily arises under federal law and the case is removable.  If not, then the complaint does not arise under federal law and is not removable."  *Beneficial Nat. Bank*, 539 U.S. at 9.

## 2.   Diversity Jurisdiction

"'District courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000' and where all parties to the action are 'citizens of different states.'"  *Grace*, 926 F. Supp. 2d at 1174 (quoting 28 U.S.C. § 1332(a)).  "The calculation of the amount in controversy takes into account claims for general damages, special damages, punitive damages if recoverable as a matter of law, and attorneys' fees recoverable by statute or contract."  *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005) (citations and internal quotations omitted); *see also Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F.Supp. 1196, 1198-99 (N.D. Cal. 1998).  The amount in controversy does not include interest or costs of suit.  *Id.*; 28 U.S.C. § 1332(a).

"Generally, the amount in controversy is to be decided from the complaint itself."  *Rippee*, 408 F. Supp. 2d at 984; *see also Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997) (citation omitted); 28 U.S.C. § 1446(c)(2).  "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also* 28 U.S.C. §§ 1332(a), 1446.

Under the preponderance of the evidence standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).   Conclusory allegations and speculative arguments regarding the potential value of the award are insufficient. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.2004) (citing *Gaus*, 980 F.2d at 567); *see also Conrad Assocs.*, 994 F.Supp. at 1198.   A statement in the petition for removal that "upon information and belief" the amount in controversy exceeds $75,000 does not constitute proof by a preponderance of the evidence.   *Id*.   A district court may consider facts in the petition for removal, and may require parties to submit "summary-judgment type evidence" relevant to the amount in controversy at the time of removal.  *Singer*, 116 F.3d at 377 (citation omitted).

## B.      Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal

1   quotations omitted).

2      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

3   relief' requires more than labels and conclusions, and a formulaic recitation of the

4   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting

5   *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)).   A court need

6   not accept "legal conclusions" as true.   *Iqbal*, 556 U.S. at 678.   Despite the

7   deference the court must pay to the plaintiff's allegations, it is not proper for the

8   court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged

9   or that defendants have violated the . . . laws in ways that have not been alleged."

10  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

11  U.S. 519, 526 (1983).

12     Generally, courts may not consider material outside the complaint when

13  ruling on a motion to dismiss.   *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

14  *Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *Branch v. Tunnell*, 14 F.3d 449, 453

15  (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty of Santa Clara*,

16  307 F.3d 1119, 1121 (9th Cir. 2002)).   "However, material which is properly

17  submitted as part of the complaint may be considered."   *Hal Roach Studios, Inc.*,

18  896 F.2d at 1542, n. 19.   Documents specifically identified in the complaint whose

19  authenticity is not questioned by the parties may also be considered.   *Fecht v. Price

20  Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statute on other

21  grounds); *see also Branch*, 14 F.3d at 453-54.   Such documents may be considered,

22  so long as they are referenced in the complaint, even if they are not physically

23  attached to the pleading.   *Branch*, 14 F.3d at 453-54; *see also Parrino v. FHP, Inc.*,

24  146 F.3d 699, 706 (9th Cir. 1998) (extending rule to documents upon which the

25  plaintiff's complaint "necessarily relies" but which are not explicitly incorporated

26  in the complaint).   Moreover, the court may consider the full text of those

27  documents even when the complaint quotes only selected portions.   *Fecht*, 70 F.3d

28  at 1080 n. 1.   Additionally, the court may consider materials which are judicially

noticeable.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.,* 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir.1962)).

### C.    Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may strike from the pleadings any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Fed. R. Civ. P. 12(f).  "Immaterial" means that the matter has no essential or important relationship to the claim for relief or the defenses being pleaded.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citation omitted), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  "Impertinent" matter includes statements that do not pertain, and are not necessary, to the issues in question.  *Id.*  "Scandalous" matter includes allegations that cast a cruelly derogatory light on a party or other person.  *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

## III.   ANALYSIS

Defendant moves to dismiss Plaintiff's intentional infliction of emotional distress claim on the ground it is preempted by the Montreal Convention which prohibits recovery for purely emotional damages.  (ECF No. 5.)  Plaintiff argues in response that the Montreal Convention does not completely preempt state law claims and moves to remand his state law claim for intentional infliction of

emotional distress.  (ECF No. 9.)  Defendant also moves to strike Plaintiff's prayer for punitive damages.  (ECF No. 4.)

### A.    Montreal Convention

The Montreal Convention,[1] signed in 1999 and entered into force in November 2003, is an international treaty governing airliner liability for the "international carriage of persons, baggage or cargo performed by aircraft for reward."  Montreal Convention, art. 1(1).[2]  The Montreal Convention supersedes the much older Warsaw Convention.  *See id*. at art. 55; *Narayanan v. British Airways*, 747 F.3d 1125, 1127, n. 2 (9th Cir. 2014).  Like its predecessor, the Montreal Convention's purpose is to promote uniformity in the laws governing airliner liability and "harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists."  *Narayanan*, 747 F.3d at 1127, n. 2, 1131; *Richards v. Singapore Airlines Ltd*, 2013 WL 6405868, at *3 (C.D. Cal. Dec. 4, 2013).  However, the Montreal Convention is unique in that it "represents a significant shift away from a treaty that primarily favored airlines to one that continues to protect airlines from crippling liability, but shows increased concern for the rights of passengers and shippers."  *Weiss v. El Al Israel Airlines, Ltd*., 433 F.Supp.2d 361, 365 (S.D.N.Y. 2006).

With respect to liability, the Montreal Convention establishes a unified system of rules regarding passenger claims for personal injury arising out of an accident, wrongful death, loss or damage to baggage or cargo, and damages

---

[1]     The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. No. 9740 (entered into force on November 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000), commonly and hereinafter referred to as the "Montreal Convention."  The United States is a party to the Montreal Convention.  *Hornsby v. Lufthansa German Airlines*, 593 F.Supp.2d 1132, 1135 (C.D. Cal. 2009).

[2]     The parties do not dispute that Plaintiff was engaged in international carriage when his Sitar case was damaged and his Sitar destroyed.  (ECF No. 5-2 at pp. 4-6; Compl. at ¶¶ 17-24, 30.)

resulting from a transportation delay.   Montreal Convention, arts. 17-19.   The Montreal Convention establishes the conditions for such claims, and sets limits on a claimant's recovery when the conditions are met.  *Id.* at arts. 17-19, 21–22.

The Montreal Convention provides for liability for damages sustained in the case of death or bodily injury of a passenger.  *Id.* at art. 17(1).  The convention also provides for strict carrier liability for destruction, loss, or damage to baggage if "the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier," except where the damage was caused by "the inherent defect, quality or vice of the baggage.  *Id.* at art. 17(2).  Article 18 of the Montreal Convention imposes liability for damage to cargo, and Article 19 imposes liability for damages resulting from delay of baggage or cargo.  *Id.* at arts. 18-19.  Article 29 sets forth the following limits on any claims for damages:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

*Id.* at art. 29.

Although the Warsaw Convention no longer applies to claims arising after the effective date of the Montreal Convention, the case law developed under the Warsaw Convention is still regarded as applicable in the interpretation of the Montreal Convention "where the equivalent provision in the Montreal Convention is substantively the same."  *Narayanan*, 747 F.3d at 1127, n. 2; *Phifer v. Icelandair*, 652 F.3d 1222, 1223, n. 1 (9th Cir. 2011).

///

///

### B.   Plaintiff's Motion For Partial Remand

Both parties agree this Court has original jurisdiction over Plaintiff's first cause of action on the basis of federal question jurisdiction.  District courts "have original jurisdiction of all civil actions arising under . . . treaties of the United States," and Plaintiff's first cause of action arises under Articles 17 and 22 of the Montreal Convention.  28 U.S.C. § 1331.  "As a treaty of the United States, the [Montreal] Convention is considered federal law for subject matter jurisdiction purposes and is the supreme law of the land."  *Best v. BWIA West Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D. N.Y. 2008); *see also Rubin v. Air China Ltd.*, 2011 WL 1002099, at *3 (N.D. Cal. Mar. 21, 2011).  The parties disagree on whether the Court has original jurisdiction over Plaintiff's second cause of action for intentional infliction of emotional distress.[3]  However, the Court finds it appropriate to exercise supplemental jurisdiction over this claim.

In any civil action of which the district courts have original jurisdiction, a district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under . . . treaties of the United States.").  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together."  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).  Supplemental jurisdiction "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one of

---

[3]       The parties do appear to agree this Court has diversity jurisdiction over this matter.  However, Defendant has not proved by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *See Matheson*, 319 F.3d at 1090; *see also* 28 U.S.C. §§ 1332(a), 1446(c)(2).

which the district courts have original jurisdiction." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).  Once a district court has the power to hear a case under 28 U.S.C. § 1367(a), its retention of supplemental jurisdiction over state law claims is discretionary.  *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).  A court may decline to exercise jurisdiction over a supplemental state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, Plaintiff's cause of action for intentional infliction of emotional distress indisputably arises from a common nucleus of operative facts, namely Defendant's alleged destruction of the Sitar during a flight on Defendant's airline, such that Plaintiff would be expected to try them all in one judicial proceeding.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  The claim does not raise a novel or complex issue of state law, substantially predominate over the property damage claim, and there is no other compelling reason or exceptional circumstances for declining jurisdiction.  *See* 28 U.S.C. § 1367(c).  Plaintiff argues that if his claim for intentional infliction of emotional distress is not remanded, he would be forced to forfeit an otherwise viable state law claim.  (ECF No. 8 at p. 8.)  However, as discussed below, the Montreal Convention would operate as an affirmative defense to limit liability whether the claim was brought in federal or in state court.  Therefore, in the interest of judicial economy, the Court exercises supplemental jurisdiction over Plaintiff's cause of action for intentional infliction of emotional

1  distress and **DENIES** Plaintiff's motion for partial remand.

2      C.      **Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)**

3          Defendant moves to dismiss Plaintiff's claim for intentional infliction of

4  emotional distress pursuant to Rule 12(b)(6) on the ground Plaintiff's claim is

5  preempted by the Montreal Convention and purely emotional injuries are not

6  compensable under the Montreal Convention because they do not constitute "bodily

7  injury" under Article 17.  (ECF No. 5.)  Plaintiff argues in response that his claim is

8  not *completely* preempted and therefore the Montreal Convention does not apply.

9  (ECF No. 8 at p. 12.)   However, Plaintiff is confusing defensive and complete

10 preemption.

11         Preemption may be either defensive or complete.   *Worth v. Universal*

12 *Pictures, Inc.*, 5 F.Supp.2d 816, 820 (C.D. Cal. 1997).   Defensive preemption,

13 which includes conflict preemption,[4] is brought as an affirmative defense to a state

14 claim, but does not create subject matter jurisdiction and does not support removal.

15 *Id.*; *Hall, 476 F.3d at 687*; *see also Caterpillar, Inc.*, 482 U.S. at 398 ("The fact that

16 a defendant might ultimately prove that a plaintiff's claims are preempted . . . does

17 not establish that they are removable to federal court").   "Complete preemption, on

18 the other hand, allows a claim to be removed and adjudicated in federal court."  *Id.*

19         "The  preemption  determination  made  for  purposes  of  determining

20 jurisdiction  has  no  bearing  on  whether  the  defendant  can  actually  establish  a

21 substantive preemption defense."  *Lyons v. Alaska Teamsters Emp'r Serv. Corp.*,

22 188 F.3d 1170, 1172 (9th Cir. 1999).   "At the removal stage, the inquiry is solely

23 whether Congress intended a preemptive force so powerful as to displace entirely

24 any state cause of action within the ambit of the federal cause of action."  *Whitman*

25

26 ─────────────

27         [4]      The Ninth Circuit recognizes three forms of defensive preemption:
    express preemption, field preemption, and conflict preemption.  *Retail Prop. Trust*
28 *v. United Broth. of Carpenters and Joiners of Am.*, --- F.3d ---, 2014 WL
    4694802at, *7 (9th Cir. Sept. 23, 2014).

1  *v. Raley's Inc.*, 886 F.2d 1177, 1180-81 (9th Cir. 1989).  Whether the defendant can
2  actually establish a substantive preemption defense, on the other hand, "is a
3  substantive inquiry as to whether a legal defense exists."  *Id*. at 1181.

4       Here, in response to Defendant's motion to dismiss, Plaintiff cites several
5  cases that stand for the proposition that state law claims are not *completely*
6  preempted by the Montreal Convention.  (ECF No. 8 at pp. 5-7.)  However, even
7  those courts which hold there is no *complete* preemption, still recognize the
8  Montreal Convention operates as an affirmative defense where it applies.[5]
9  Accordingly, the Montreal Convention, at a minimum, acts as an affirmative
10  defense to Plaintiff's claim for intentional infliction of emotional distress where it
11  applies.[6]

12  _____

13      [5]      *See Jensen v. Virgin Atl.*, 2013 WL 1207962, at *4 (N.D. Cal. Mar. 25,
14  2013) (holding that the exclusivity provisions of the Montreal Convention operate
as an affirmative defense), *Nankin v. Continental Airlines, Inc*., 2010 WL 342632,
15  at *6 (C.D. Cal. Jan.29, 2010)(holding that the Montreal Convention controls the
16  remedies and available liabilities that can be imposed via state law causes of
action); *see also Lathigra v. British Airways PLC*, 41 F.3d 535, 539 (9th Cir. 1994)
17  (finding the plaintiff's state law claim was not covered by the scope of the Warsaw
18  Convention); *Serrano v. Am. Airlines, Inc*., 2008 WL 2117239, at *7 (C.D. Cal.
May 15, 2008) (addressing only whether the Montreal Convention completely
19  preempted the plaintiff's state law claims).
20      [6]      The Court recognizes a split of authority exists on the question of
whether the Montreal Convention completely preempts all claims arising under its
21  scope such that it vests original jurisdiction in federal court or if the Montreal
22  Convention's limited liability provisions operate solely as an affirmative defense.
*Compare Jensen*, 2013 WL 1207962, at *3; *Zatta v. Societe Air France*, 2011 WL
23  2472280, at *3 (C.D. Cal. Jun. 21, 2011); *Serrano*, 2008 WL 2117239, at *7;
24  *Nankin*, 2010 WL 342632, at *8; *Narkiewicz v. Scandinavian Airlines Systems*, 587
F.Supp.2d 888, 890 (N.D. Ill., 2008); *Constantino v. Cont'l Airlines, Inc*., 2014 WL
25  2587526, at *3-4 (D.N.J. Jun. 9, 2014), with *Fadhiliah v. Societe Air France*, 987 F.
26  Supp.2d 1057, 1064 (C.D. Cal. 2013).  To date, "[n]either the Supreme Court nor
the Ninth Circuit has ruled on whether the Montreal Convention completely
27  preempts a plaintiff's state law causes of action."  *Jensen*, 2013 WL 1207962, at *3;
28  *see also Greig v. U.S. Airways, Inc*., 2014 WL 2999199, at *3 (D. Ariz. June 26,
2014).  As the Court has subject matter jurisdiction over this entire matter, it does

An affirmative defense may be considered on a motion to dismiss where the "allegations in the complaint suffice to establish" the defense.  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).  Although it does not enable removal, defensive preemption does constitute a complete defense to a state law claim.  *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 689, n. 8 (9th Cir. 2007).

### 1.   Application of Montreal Convention

The Montreal Convention preempts state law in the areas where it applies and "provides the exclusive remedy for international passengers seeking damages against airline carriers."  *Narayanan*, 747 F.3d at 1127; *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 171-72 (1999) (interpreting predecessor Warsaw Convention); *Motorola, Inc. v. Fed. Exp. Corp.*, 308 F.3d 995, 999 (9th Cir. 2002) ("The [Warsaw] Convention preempts state and federal claims falling within its scope." (citing Article 24 of the Warsaw Convention, the predecessor to Article 29 of the Montreal Convention)); *Schoenebeck v. Koninklijke Luchtvaart Maatschappij N.V.,* 2014 WL 1867001, at *3 (N.D. Cal. May 8, 2014).  Thus, a passenger whose claim is not compensable under the Montreal Convention will have no recourse to an alternate remedy.  *El Al Israel Airlines, Ltd.*, 525 U.S. at 160-61.  However, "[t]he Convention's preemptive effect on local law extends no further than the Convention's own substantive scope.  A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope: *e.g.*, for passenger injuries occurring before any of the operations of embarking or disembarking."  *Id*. (internal quotations and citations omitted.)  To determine whether a claim falls within the scope of the Convention, courts are "directed to look to the Convention's liability provisions."  *King v. Am. Airlines, Inc.*, 284 F.3d 352, 358 (2d Cir. 2002) (citing *Tseng*, 525 U.S. at 171-72).

The first question is therefore whether the Montreal Convention covers

not need to resolve this conflict for purposes of this case and declines to do so.  The Court will treat the Montreal Convention as an affirmative defense where it applies.

Plaintiff's claim for intentional infliction of emotional distress arising out of Defendant's alleged delay in delivering Plaintiff's Sitar and damage to the Sitar case and destruction of the Sitar. (Compl. at ¶¶ 26-29.) The second is whether the Montreal Convention permits recovery for emotional distress damages on the facts alleged.

a.    *Article 17(1)*

Defendant argues that purely emotional injuries are not compensable under the Montreal Convention because they do not constitute a "bodily injury" under Article 17, while Plaintiff asserts that the Montreal Convention's provisions do not apply to his claim. (ECF No. 5-2 at p. 8; ECF No. 8 at p. 12.)

Article 17(1) of the Montreal Convention provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger *upon condition only that the accident which caused the* death or *injury took place on board the aircraft* or in the course of any of the operations of embarking or disembarking.

Montreal Convention, art. 17(1) (emphasis added). Thus, Article 17(1) only applies if "the accident which caused the . . . injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Id.*; *see also Air France v. Saks*, 470 U.S. 392, 396 (1985) ("[Airline] is liable to a passenger under the terms of the . . . Convention only if the passenger proves that an 'accident' was the cause of [his or] her injury."). An accident is defined as an "unexpected or unusual event or happening that is external to the passenger." *Saks*, 470 U.S. at 405; *see also Narayanan*, 747 F.3d at 1127. This definition should be flexibly applied. *Id.*

While the present case differs from the typical case where the alleged injury took place while the passenger was on board the plane, or in the process of embarking or disembarking the plane, Plaintiff alleges – and there appears to be no dispute – that the alleged "accident which caused the . . . injury" at issue took place on board the aircraft. *See* Compl. at ¶¶ 21-29, 34, 38-39; *Saks*, 470 U.S. at 398

1   ("[T]he text of Article 17 refers to an accident *which caused* the passenger's injury,

2   and not to an accident which *is* the passenger's injury." (emphasis in original));

3   *Phifer v. Icelandair*, 652 F.3d 1222, 1224 (9th Cir. 2011).   "[I]t is the *cause* of the

4   injury that must satisfy the definition rather than the occurrence of the injury

5   alone."   *Phifer*, 652 F.3d at 1294 (quoting *Saks*, 470 U.S. at 399).   Accordingly,

6   Plaintiff's claim for intentional infliction of emotional distress falls within the

7   substantive scope of Article 17(1).

8        "Article 17 does not allow recovery for purely mental injuries."   *Eastern*

9   *Airlines v. Floyd*, 499 U.S. 530, 534 (1991) (interpreting Article 17 of the Warsaw

10  Convention)[7]; Montreal Convention, art. 17(1).   Mental or emotional injuries are

11  only recoverable under Article 17 when an accident has caused a passenger to suffer

12  physical injury.   *Id.* at 552; *Carey v. United Airlines*, 255 F.3d 1044, 1051 (9th Cir.

13  2001) ("[P]hysical manifestations of emotional and mental distress do not satisfy

14  the 'bodily injury' requirement in Article 17.").   Plaintiff has alleged no physical or

15  bodily injury.   Therefore his claim for intentional infliction of emotional distress

16  cannot stand under Article 17(1).

17              b.   *Articles 17(2) and 19*

18        Plaintiff's intentional infliction of emotional distress claim relates directly to

19  Defendant's delay in delivering Plaintiff's Sitar, and the alleged damage to the Sitar

20  case and destruction of the Sitar.   (Compl. at ¶¶ 26-29, 38.)   Article 17(2) expressly

21  provides for the liability of an airline in the case of "destruction or loss of, or of

22  damage to, checked baggage" if "the event which caused the destruction, loss or

23  damage took place on board the aircraft or during any period within which the

24  checked baggage was in the charge of the carrier."   Montreal Convention, art. 17(2).

25  _____

26        [7]   Article 17 of the Warsaw Convention similarly stated: "The carrier
    shall be liable for damage sustained in the event of the death or wounding of a
27  passenger or any other bodily injury suffered by a passenger, if the accident which
    caused the damage so sustained took place on board the aircraft or in the course of
28  any of the operations of embarking or disembarking."   *See Saks*, 470 U.S. at 397.

Article 19 also expressly provides for liability of an airline "occasioned by delay in the carriage by air of . . . baggage." *Id.* at art. 19. The event that caused the damage to the Sitar and its case allegedly took place on board the aircraft or while the Sitar was in the charge of Defendant, and the delivery of the Sitar was delayed. (Compl. at ¶¶ 27-29.) Accordingly, Plaintiff's cause of action also falls within the substantive scope of Articles 17(2) and 19.

An airline's liability under Articles 17(2) and 19 is expressly limited by Article 22. Article 22(2) limits the liability of an airline for the "destruction, loss, damage or delay" of baggage to 1,000 Special Drawing Rights ("SDR") for each passenger, unless a special declaration of interest was made at the time the baggage was checked and the appropriate fee paid. Montreal Convention, art. 22(2). No special declaration of interest was made in this case (ECF No. 1-2 at ¶ 31), therefore Plaintiff's damages are limited to 1,000 SDR, unless Article 22(5) applies.[8] Plaintiff alleges that it does. (Compl. at ¶¶ 32-35.) Article 22(5) provides that the limiting liability provision of Article 22(2) does not apply "if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result." Montreal Convention, art. 22(5).

However, Article 22(5) does not take Plaintiff's cause of action outside the scope of the Montreal Convention. The convention creates "no exception for an injury suffered as a result of intentional conduct." *Carey*, 255 F.3d at 1051. In other words, the convention provides the exclusive remedy for claims arising out of

---

[8]    SDR are defined by the International Monetary Fund, and conversion of SDR into U.S. Dollars "shall, in case of judicial proceedings, be made according to the value of such currencies in terms of the [SDR] at the date of the judgement." Montreal Convention, art. 23(1). Pursuant to Article 24 of the Montreal Convention, every five years an inflation factor is applied to revise the various limits of liability. *Id.* at art. 24. The parties have not identified the current limit, but the Court recognizes this amount may have increased when adjusted for inflation.

a carrier's intentional misconduct.  *See Dazo v. Globe Airport Sec. Servs.*, 295 F.3d 934, 940 (9th Cir. 2002) (interpreting the substantively similar Article 25 of the Warsaw Convention); *see also Carey*, 255 F.3d at 1049-50; *Brandt v. Am. Airlines*, 2000 WL 288393, at *6 (N.D. Cal. Mar. 13, 2000).  "If a plaintiff establishes willful misconduct by the carrier, Article [22(5)] lifts the Convention's limits on liability, but the Convention remains the exclusive source for the plaintiff's remedy." *Id.*

Articles 17(2), 19, and 22(5) are silent as to emotional distress damages.  But courts have determined that purely emotional distress damages are not recoverable under Articles 17(2) and 19.  *See Daniel v. Virgin Atl. Airways, Ltd.*, 59 F.Supp.2d 986, 992 (N.D. Cal. 1998) (holding that purely emotional injuries are not available under Article 19); *Rubin v. Air China Ltd.*, 2011 WL 2463271, at *2 (N.D. Cal. Jun. 21, 2011) (finding that purely emotional injuries under Article 19 are not available under the Montreal Convention); *Lee v. Am. Airlines, Inc.*, 355 F.3d 386, 387 (5th Cir. 2004) (finding mental injury damages are not recoverable under Article 19 of the Montreal Convention); *see also Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F.Supp.2d 343, 367-68 (E.D. N.Y. 2012); *Fields v. BWIA Intern. Airways Ltd.*, 2000 WL 1091129, at *6, n. 6 (E.D. N.Y. Jul. 7, 2000); *Bassam v. Am. Airlines*, 287 Fed. Appx. 309, 316, n. 8, 317-18 (5th Cir. 2008) (holding emotional distress damages cannot be recovered under Articles 17(2) and 19).

Emotional distress damages are similarly not available under Article 22(5). Although Article 22(5) lifts the limits with regard to damages, it does not invite Plaintiff to seek damages precluded elsewhere by the Convention.  In *Carey*, the Ninth Circuit held that Article 25 of the Warsaw Convention, the predecessor to Article 22(5), did not remove a plaintiff from the ambit of the Convention.  *Carey*, 255 F.3d at 1049-51. In coming to this conclusion, the Court cited three sister circuits, each of which "emphasized that, notwithstanding Article 25's removal of limitations and exclusions on a carrier's liability, the rest of the Convention still governs the action, including Article[] 17." *Id.* at 1050 (internal quotations omitted)

(citing *In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1474, 1488–89 (D.C. Cir. 1991); *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1286 (2d Cir.1991), overruled on other grounds by *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996); *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1483 (11th Cir. 1989), judgment reversed on other grounds by *Floyd*, 499 U.S. at 552). Thus, damages for emotional distress, including damages caused by intentional conduct, are only recoverable pursuant to the limits set forth by Article 17(1), which requires a physical injury. *See Carey*, 255 F.3d at 1048-49 (finding that an "accident" under Article 17 can include intentional misconduct). Plaintiff has cited no cases to the contrary. Moreover, Article 22(5) "merely precludes carriers from benefitting from the monetary ceilings on liability by paragraphs 1 and 2 of Article 22 if they intentionally or recklessly cause damage." *Molefe v. KLM Royal Dutch Airlines*, 602 F.Supp.2d 485, 488 (S.D. N.Y. 2009). The provision "does not independently create a cause of action for damages for any alleged injury borne out of willful or reckless conduct." *Id.*

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's cause of action for intentional infliction of emotional distress under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Although it stretches the Court's imagination that the allegation of additional facts could possibly cure the deficiency, the Court dismisses Plaintiff's cause of action for intentional infliction of emotional distress without prejudice.

### C.    Defendant's Motion to Strike Pursuant to Rule 12(f)

Defendant moves to strike Plaintiff's prayer for punitive damages pursuant to Rule 12(f) of the Federal Rules of Civil Procedure on the ground that the Montreal Convention expressly prohibits the recovery of punitive and exemplary damages. (ECF No. 4.) As discussed above, both of Plaintiff's causes of action are exclusively governed by the Montreal Convention. The Court acknowledges that under the Montreal Convention Plaintiff cannot recover "punitive, exemplary or

other non-compensatory damages."  Montreal Convention, art. 29; *Carey*, 255 F.3d at 1049-51; *Dazo*, 295 F.3d at 940; *Miller v. Cont'l Airlines*, 260 F.Supp.2d 931, 939-40 (N.D. Cal. 2003); *Jack v. Trans World Airlines, Inc.*, 854 F.Supp. 654, 663 (N.D. Cal. 1994) (citing *In Re Korean Airline Disaster of September 1, 1983*, 932 F.2d 1475 (D.C. Cir. 1991); *In Re Air Disaster at Lockerbie Scotland On December 21, 1988*, 928 F.2d 1267 (2d Cir. 1991)).  However, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."  *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974-76 (9th Cir. 2010).  The Ninth Circuit has held that using Rule 12(f) in such a way would allow litigants to "attempt to have certain portions of [an adverse party's] complaint dismissed or to obtain summary judgment against [the adverse party] as to those portions of the suit," and those actions are "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion."  *Id.* at 974.

Accordingly, the Court **DENIES** Defendant's motion to strike Plaintiff's prayer for punitive damages.

## V.   CONCLUSION

For the foregoing reasons, the Court (1) **DENIES** Plaintiff's motion for partial remand (ECF No. 9); (2) **GRANTS** Defendant's motion to dismiss Plaintiff's cause of action for intentional infliction of emotional distress without prejudice (ECF No. 5); and (3) **DENIES** Defendant's motion to strike Plaintiff's prayer for punitive damages (ECF No. 4).

**IT IS SO ORDERED.**


**DATED:  November 4, 2014**

**Hon. Cynthia Bashant**
**United States District Judge**